and Allah Al Abadi 2017 1044. Mr. Blankenship, good morning. Good afternoon Mr. Blankenship, it's unclear to me from your briefing how you expect this court to find Al Abadi personally liable as a defendant when you don't present any evidence with his name on it and the only evidence presented at best are web screen, web page screenshots and a single unsigned letter between counsel for Shisha Center. Is there any evidence of record of any actual evidence that Al Abadi ever made contact with Virginia? Well, a physical communication to Virginia from Allah Al Abadi, no. Okay. The evidence in this case, your honor, because of the stage that it is in comprises the pleadings and the allegations, the complaint. There's quite a bit that we know about. Do you disagree with Al Abadi's sworn statement? He says he was a part owner in Shisha Center. He exercised no control over decisions regarding Shisha Center and then it was dissolved before this litigation ever commenced. Yes. Do you disagree that he had no control over Shisha Center? And we know quite a bit about. What evidence is there of decisions he made regarding Shisha Center? Actual evidence in the record and refer me to the record. At this point, no, your honor. Right now it is in the allegations. That's that's why the district court said it's all California. Well, your honor, we'd like to we'd like to be able to rest on the allegations that we've made because we know quite a bit. You said you were going to file an amended complaint, but you never did. You said you filed this appeal. The purpose of filing the complaint was not to The purpose of the amended complaint was for service against Dabes, who is no longer a part of the suit. This is for purposes of complying with the Hague Convention, not for any sort of reasons of litigation against Mr. Al Abadi. In the blue brief, you say Al Abadi simply switched his importation of AMY products from Shisha Center entity to his against Dabes. MySRA has reviewed Dabes shipping documents. Where's that stuff in the record? It is not in the record at this point, your honor, and that is because when you are litigating the TTAB, one of the things that you do is you sign a non-disclosure agreement, a discovery order that prevents you from using the materials from that litigation in other litigations. Is that present in the record? The fact that I believe that actually is in the briefing. Where's that in the record? That would be in the brief we filed with the district court, your honor, not in the record for this court. So that would have been somewhere in appendix item. So what you're asking us to do is just your word as to the existence of these documents. Take our word on the factual allegations that we've put into the complaint. What we have put into the complaint was quite carefully drafted. It is what we believe to be true. It is what research has shown to be true. It is what prior litigations have shown to be true. It is what is objectively supportable in a court. It's just we haven't brought that evidence in, and that's the sort of thing that we're going to discover. Did you ever request jurisdictional discovery? No. You rely on silent drive, the strong industries. Yes, your honor. And you argue, quote, where no jurisdictional discovery has been taken, a court must accept the complaint's allegations as true and resolve all factual disputes in the plaintiff's favor. That's at page one of your reply brief. Yes, your honor. Silent drive doesn't use the word must. It says we have to construe pleadings and affidavits in the light most favorable to. Yes, your honor. And then resolve all fact disputes we have to construe. You understand you've misstated a legal premise to the court. My apologies, your honor. What may have happened is that I saw it in another case, and I turned into a poor mentor of principles. My apologies. But what we're asking this court to do in a very general sense is simply remind the district court that there is more at play than simply a stream of commerce analysis. That there's more at play than just a simple Asahi analysis in terms of whether or not an infringer can be brought into a state for litigation. And the district court did that. It retained the factual analysis to purely be an analysis of where are the products going? How many products are there? Where is Al-Abadi, through his entities, strictly sending the products? And in the factual declarations, we pled that Al-Abadi is a distributor who is passing these out to retailers who are selling them in Virginia. And Al-Abadi countered that with assertions that, we don't sell to Virginia, but we pled that they are a distributor. Why don't you sue with his apparently jurisdiction, California? Well, that's true that there's certainly jurisdiction in California, but we believe there's a very strong case to be made with this jurisdiction in Virginia as well. Al-Abadi and his manufacturer targeted Virginia. And as in the Silent Drive case, their communications from the defendant to the forum state, through his entities, made a promise not to sell infringing items anymore. Simply folded up the entity that was doing it and then rerouted it to what was at the time a retail store. Now, this case is a case where a Calder analysis belongs. And there's simply not a lot of jurisprudence from this court about whether or not a Calder analysis can be applied at all. And I think the district court was afraid to step beyond the stream of commerce analysis. Um, because the manufacturer asked me, at one point, we would like to distribute your products, he said no. So, the Amy brand was created. The Amy brand was created to copy the Mia brand. It's not that much different than someone asking to distribute coke, getting turned down for coke, creating a can that looks like coke and something that distributors. Look at what we have. It looks just like coke. Would you like to distribute it? And when the distributor says yes, then that distributor is at fault in the same way that the manufacturer is. I'm struggling with your reliance on Calder because Calder itself had significant contact with the forum state. I just don't see contact here of the type that you see Calder. How, you know, how can you, what sources do you have? I mean, in Calder you had that party that was harmed was in California. You had that there were contacts with parties in California. There was a lot more contacts there. What do you have here to support Calder? The intent. Finding an entity to target, intending to harm that target, and then carrying out a plan to harm the target. Very much in the same way of the Dakota case in the eighth circuit for where they targeted a brand to copy, received knowledge that they probably were copying that brand, kept doing it anyway. Even though, like the owner of the company said at the time, we expected this. We knew this was going to happen. When you ask an entity to distribute their products, they say no, you create a copycat brand. How can you not expect to be sued by that entity? When you tell an entity that you are not going to continue to distribute infringing products, how can you not expect to be held to your obligation when you break it? But in the Calder case, there was also the fact that I think maybe a large percentage of the distributorship of the magazine was directed to California. There have been contacts with sources for the article in California. It's true that I guess Calder is analogous in terms of where the location of the party was that was harmed by the actions. But what do you have besides that? Well, certainly in the same way that in Calder there was distribution of the publication in California, there are certainly sales of the hookahs in Northern Virginia. But you have no, I mean, when Judge Brinkelman asked you, where is your evidence of sales, you admitted there was no evidence of sales other than the fact that you would think that it would be sold in Virginia given the population in Virginia, right? Not quite, Your Honor. What we said is we didn't know that Alibadi sold them directly to Virginia. The Amy products are in Virginia. They're in physical locations. They're sold via web retail outlets to Virginia. We do know these things. But what we don't know is whether or not they're coming directly from Alibadi to Virginia. Where's that in the record, the actual physical sales in Virginia? Not what's offered on the web. It is in for both the physical sales and the internet sales, appendix 11 to 12 and 142 through 157. Did you say 1112? Yes. And what was the other page? 142 to 157. And these are, again, these are the pleadings that are in the complaint. Mr. Blankenship, you're into your rebuttal time. If you'd like to save it, I'll continue. I would like to save it, Your Honor. Thank you very much. Mr. Lord. Good morning, Your Honor. I think this court, through its questioning, has clearly identified the problem here. And the problem is there's simply no evidence in the record for appellant to meet its burden and make a promethasia case a personal jurisdiction. A large premise of Alibadi's defense involves its denial of Maya's allegations that Alibadi or his entities are a national distributor as opposed to being a single smoke shop in California. Is that correct? Correct. You argue in the red brief that Alibadi denied being a national distributor and Maya's arguments fail because there's no evidence in the record that Alibadi sells to any retail stores, let alone anyone in Virginia. Frankly, I just went, other than there's an affidavit in here, it doesn't really say much. The other pages to which your friend cites don't mention Virginia physical sales. But if I go to the next exhibit, exhibit five, there is a statement on page 161 from the business. And this is a website for the Shisha Center. We are a wholesale warehouse for all your hookah and tobacco needs. All proper business licenses are needed for customer service. Does that imply something outside the state of California? Well, two points, your honor. That relates to Shisha Center Inc. Shisha Center Inc. is not a party to this action. The party to this action is Alibadi. Maya had identified Alibadi as the allegation in the Alibadi declaration, that appendix. Who dissolved the Shisha company? Your honor, Shisha Center Inc. is not my client, so I don't know all the details about Shisha Center Inc. So I don't know who dissolved it, but I know it is dissolved, your honor. And to my original point about Shisha Center Inc., they're not a party to this action. And we controverted Shisha Center being a party. They're not a DBA, your honor. So the question is whether Alibadi or his company, which he owns, Roll Smoke Shop, targeted Virginia. And there's really no evidence in the record, as this court has noted. No invoices, no sales, no employees, no officers. There's really no presence. And that's what Judge Brinkman said, appendix 195. But given the record in this case, if the court were to find jurisdiction, it would basically, I think, just about evaporate any kind of criteria for personal jurisdiction. So that's really the point here, your honor. There is no evidence. And to the judges that questioned earlier about why isn't this suit filed in California, we filed a D.J. in California. I'm sorry. We filed a D.J. in California, which is not state. That's where this case belongs, your honor. And we believe it's going to proceed there. Counsel has made statements, both in this brief and today, regarding assertions that have no support in the record. For example, counsel stated today that Al-Abadi targeted Virginia. There's no evidence that Al-Abadi targeted Virginia. Al-Abadi is based in California. They have to come forward and show that he is shooting from California and aiming towards Virginia. And there's no evidence of that, your honor. So given the facts here, given the paltry record, your honor, we cited a bunch of cases, the McEntry case. There's the AFTG case. The courts have found no jurisdiction with contacts far greater than the case here. This court should affirm the judgment below. So unless there's other questions, I submit my brief. Thank you, counsel. Mr. Blankenship has some rebuttal time. Mr. Blankenship, you're relying, you cited us to certain pages in the record, including an mention of Virginia basically says that Virginia has a substantial Arab American population. Yes, your honor. And that's it. Well, in the same way that there are target markets for specific items, this is a very big market for hookah sales, and the same way that there's, that hookahs do not have uniform national popularity. Hookahs are the sort of product that are available in some markets. They're not as, not quite as hot in central Mississippi as they are in Dearborn and Detroit, Michigan. When you sell hookahs, you are selling to five markets. And that's what Mr. McDowell, who's the president of the MSRA, is testifying to, is that you can't not sell hookahs. Where do you testify to that? I believe that's the very back of his declaration, your honor. And I read his speculation. I didn't find any underlying factual support for it. Well, the underlying factual support, your honor, is his experience as the owner and proprietor of MSRA LLC. And while we're discussing where is evidence, physical location evidence is appendix 12, paragraph 24, internet sales appendix 11, paragraph 23. These are allegations in the complaint. We've been to the stores. We've seen the hookahs. We know where they are. But we think the opposing counsel was quite wrong when he's saying that nobody's shooting anything into Virginia. In the same way in Silent Drive, where someone shot an infringement cease and desist letter, a demand letter, out from the state of declaratory judgment, where it went into the state of declaratory judgment plaintiff. In the same way, when you reach into Virginia and tell a Virginia entity, we're going to stop distributing hookahs, you're setting off a chain of events in the state of Virginia that's basically getting you off the hook from litigation. And that's what Al-Abadi intended to do here. He intended to tell a Virginia entity, don't sue us. We're not doing it anymore. Take litigation resources, use them elsewhere. And that's what Mia Sarai did. And that's one of the ways that he's purposely availed himself of the Virginian forum. We were asking this court, just use the same sort of rationale that it applies to demand letters, to responses to demand letters. And I think the analogy is appropriate, if not more so, because there's a response to a demand letter. There's the affirmation, we will stop. And when you never intend to stop, and this is a Calder analysis, and when you do not stop, we would suggest that this is a Burger King analysis. And that's it, your honors. Thank you, counsel. We'll take the case under advisement.